## A. L. McCallister, Appellant, *v.* Armstrong County.

*Constable's fees and costs—Noncollectible fees and costs designated.*

A constable is not entitled to charge and collect fees for the following services, i. e., attending a borough election; for making his quarterly return to court; a fee of $1.00 for each defendant arrested on a warrant; for car fare expended in transporting prisoners to the office of the justice; for cash expended for meals for prisoners in transit, a fee of fifty cents for each witness served on subpœnas issued by the court.

*Constable's fees—Serving subpœnas for commitments—Backing warrant by justice.*

A constable is entitled to a fee of fifty cents for each witness served on a subpœna issued by a justice of the peace; to $1.00 for each defendant committed; to the sum of fifty cents paid the justice of another county for backing a warrant.

Argued May 10, 1898. Appeal No. 89, April T., 1898, by plaintiff, from judgment of C. P. Armstrong Co., Sept. T., 1897, No. 8, in favor of defendant on case stated. Before Rice, P. J., Beaver, Reeder, Orlady, Smith and Porter, JJ. Modified and reversed.

Case stated. Before Rayburn, P. J.

It appears from the case stated that this case arose concerning the fees and mileage or amount thereof and expenses which the county should pay constables for certain services performed by them in the discharge of their official duty. In the case stated the plaintiff claimed mileage at the rate of ten cents circular, also for the amount of fifty cents paid to a justice of the peace of Indiana county for indorsing a warrant issued by a justice of Armstrong county. For serving subpœnas issuing out of the court of quarter sessions the plaintiff claimed fifty cents for each person served, also for attending at the borough election and notifying the officers elected and for compensation for making quarterly returns to the court. The court below specified the claims of the plaintiff which were to be allowed, as follows :

| | |
|---|---:|
| For mileage in arrest of defendants, 28 miles at 10c. per mile . . . . . . . | $2 80 |
| For execution of warrant . . . . . | 1 00 |
| For service of subpœna issued by magistrate . | 50 |
| Mileage, five miles direct . . . . . | 50 |
| For executing commitment . . . . . | 1 00 |
| Mileage, one mile direct . . . . . | 10 |
| For serving subpœna from the court of quarter sessions, five services . . . . . | 75 |
| Mileage, ten miles direct at 12 cents . . | 1 20 |
| For service of certificates, upon officers elected at borough election, one mile . . . . | 10 |
| Mileage for making quarterly return, one mile | 10 |
| Total . . . . . . . | $8 05 |

The court directed judgment to be entered for the plaintiff in the sum of $8.05. Plaintiff appealed.

*Errors assigned* were (1) in not allowing plaintiff fifty cents for each witness served on a subpœna issued by justice of the peace. (2) In not allowing the plaintiff $3.00 for attending the borough election. (3) In not allowing plaintiff $1.50 for making his quarterly return to court. (4) In not allowing plaintiff $1.00 for each defendant arrested on the warrant. (5) In not allowing plaintiff $1.00 for each defendant committed. (6) In not allowing plaintiff $2.00 for advertising the borough election. (7) In not allowing plaintiff twenty cents for serving each certificate of election on each officer elected. (8) In not allowing plaintiff fifty cents paid the justice for backing or indorsing the warrant. (9) In not allowing plaintiff $3.00 expended by him for car fare of defendant, and seventy-five cents for meals for defendant. (10) In not allowing plaintiff fifty cents for each witness served on subpœna issued by court.

*John F. Whitworth*, with him *W. D. Patton*, for appellant.— These questions have been decided by the Superior Court in the recent case of Price v. Lancaster County, 7 Pa. Superior Ct. 119, in which it was held that a constable is entitled to charge fifty cents for each witness subpœnaed and ten cents for each mile direct.

The legislature by Act of June 15, 1897, P. L. 165, authorizes the payment to constables of $3.00 for attending borough elections, and $1.50 for making returns to court since January 1, 1896.

As to the execution of warrants, cited Humer v. Cumberland Co., 4 Dist. Rep. 588; Diehl v. Dauphin Co., 5 Dist. Rep. 525; Woomer v. Clearfield Co., 5 Dist. Rep. 362.

As to execution of commitments, cited Davison v. Franklin Co., 5 Dist. Rep. 745, where it is held that the compensation of the officer for such services is $1.00 for each person delivered to the jailer.

As to advertising election, cited Act of June 13, 1840, sec. 11; Leitzel v. Center Co., 6 Dist. Rep. 208.

As to the indorsement of warrants by justice of another county, cited act of March 31, 1860.

The constable having paid the justice is entitled to be reimbursed.

As to money expended by the constable for car fare and meals for the prisoner, the Act of March 31, 1860, sec. 3, P. L. 427, entitles the constable to recover the expenses of removing any person charged with having committed an offense in one county into another county. This provision is not confined to the expenses incurred by sheriffs in the removal of prisoners, but is sufficiently broad, and is intended to embrace the expenses of constables in the performance of like services.

As to the compensation of the constable in serving subpœna issued out of court, it should be the same as that on a subpœna issued by a justice and the constable's fee bill allows him fifty cents for each witness subpœnaed.

*Ross Reynolds*, for appellee.—The opinion of the court below in this case was filed on June 7, 1897, a week before the passage of the act of June 15, 1897. Fraim v. Lancaster Co., 171 Pa. 436, and Lyons v. Means, 1 Pa. Superior Ct. 608, settle the question that the act of April 2, 1868, was repealed by the act of 1893.

It is too plain for argument that a court cannot be convicted of error by the retrospective provisions of an act that was not in existence when the case was decided.

The purpose of the act of 1868 is not as has been frequently assumed, to increase the fees of constables, but as the title declares, shall be uniformity throughout the commonwealth in the charges of justices of the peace, aldermen and constables: Woomer v. Clearfield Co., 5 Dist. Rep. 362; Conley v. York Co., 5 Dist. Rep. 748; Davison v. Franklin Co., 5 Dist. Rep. 745; Keller v. Clinton Co., 4 Dist. Rep. 216; Humer v. Cumberland Co., 4 Dist. Rep. 588.

The courts will not impute to the legislature an intent to make the county liable for costs where it is not so expressed in the act: Conley v. York Co., 5 Dist. Rep. 748; Wadlinger on Costs, 205.

The recovery and payment of costs in criminal cases are so entirely dependent on statutory regulations, that it is indispensable for every claimant to point to the statute which entitles him to receive what he claims: County of Franklin v. Conrad, 36 Pa. 317; Wayne Co. v. Waller, 90 Pa. 99.

Public officers who are paid for their services by fees, take and hold their offices cum onere, and can claim therefore, no compensation out of the public treasury not provided for in the fee bill: Lehigh v. Semmel, 124 Pa. 358.

OPINION BY RICE, P. J., February 17, 1899:

1. A constable cannot be compelled to serve a subpœna issued from the office of the prothonotary or of the clerk of the quarter sessions for the attendance of witnesses at court.   He may do so, as, indeed, any private citizen may, but for such service he is compensated, not according to the Act of May 23, 1893, P. L. 117, but according to the sheriff's fee bill.   He is entitled to the fee which the sheriff, or any person acting in his stead, is entitled to, namely fifteen cents for each person served.   The fee for serving a subpœna issued by a justice of the peace is fixed by the act of 1893, and under the construction given to that act, in Price v. Lancaster Co., 7 Pa. Superior Ct. 119 (a decision rendered since this case was decided in the court below), this is fifty cents for each person named in the subpœna and actually served.   This decision was recently affirmed by the Supreme Court on appeal.   (189 Pa. 95.)

2. The Act of April 2, 1868, P. L. 3, allowed constables a fee of $3.00 for attending special, township, ward or borough elections, and a fee of $1.50 for making their returns to court. Several counties of the commonwealth were excepted from the operation of this act and it was, therefore, a local or special statute.   The declared purpose of the act of 1893 was to establish a " uniform fee bill for the several counties thoughout the commonwealth," and to repeal all statutes, whether general or special, inconsistent with its provisions.   Hence it had been expressly held that it repealed the act of 1868, so far as the same related to the fees of justices of the peace and constables elected after its passage: Fenner v. Luzerne Co., 167 Pa. 632; Fraim v. Lancaster Co., 171 Pa. 436; Hays v. Cumberland Co., 5 Pa. Superior Ct. 159, affirmed by the Supreme Court, 186 Pa. 109.   The act of 1893 allows no fee for the services now under consideration (second and third assignments), and as uniformity was the object to be attained, the presumption is, that it was intended as a complete substitute for the constable's fee bill of 1868 and all similar local or special laws.   The court cor-

rectly held, that the plaintiff was not entitled to the fees referred to in the second and third assignments under the act of 1893; and, of course, cannot be convicted of error in not holding that the Act of June 15, 1897, P. L. 165, applied to the case. That act was not approved until after judgment had been entered in the court below.

3. The act of 1893 allows a fee of $1.00 " for executing warrant on behalf of the commonwealth." This is the language of all of the fee bills established prior to 1868. See Act of March 28, 1814, 6 Sm. L. 228, Act of February 22, 1821, 7 Sm. L. 367, and Act of April 18, 1857, P. L. 229. In the act of 1868 the words " for each defendant " were added. If two or more persons are named in the warrant, and all of them can be arrested, it cannot, in strictness, be said that the constable has fully executed the warrant when he has arrested one of them. " As regards obedience by the officer to the command of the writ his duty is single, and is not fully performed until all of the command has been executed:" MITCHELL, J., in Price v. Lancaster Co., supra. But whether the legislature used the words " executing warrant" or " serving subpœna " in this strict sense, or as the equivalent of " each arrest " or " each service " is a question which may receive different, but not necessarily, inconsistent, answers in the construction of different items in the fee bill. The question is, what was the intention of the legislature, and in ascertaining that the contemporaneous construction put upon the same words of a previous fee bill is to be taken into consideration. In Price v. Lancaster Co., Judge WICKHAM said: " So far as we have been able to learn, the universal practice throughout the commonwealth, under the act of 1868, was to allow the fee for each witness served." Speaking of the same matter Mr. Justice MITCHELL, who delivered the opinion of the Supreme Court, said : " Such practice was a contemporary construction of the act which was presumably known to the legislature, and when in the act of 1893 they used the same words, merely increasing the amount, the presumption is strong that they intended them to bear the same construction." Judge WICKHAM said this was entitled to " considerable weight," and Judge MITCHELL said it was " the weightiest consideration on the whole subject." The same principle cannot be invoked in the decision of the question now before us. There had been

no such settled construction, as is now contended for, given to the words, "for executing warrant," and the legislature of 1868 deemed it necessary to add the words "for each defendant" in order to give a fee for each arrest. The omission of these latter words from the act of 1893 leads us to the conclusion, that the intention was to change the existing law, not only as to the amount of the fee, but also as to the service for which it was to be allowed. If the legislature had intended to give a fee for each arrest in the execution of a warrant, it seems to us, that they would have used the language of the fee bill of 1868. The courts of common pleas differ in their construction of some of the items of the fee bill of 1893, but so far as we can learn from the reported decisions that have come to our notice there is no difference of opinion upon this point.

4. We come next to the fee on commitment. The words "for each defendant" appeared in the act of 1868 and are omitted from the act of 1893; but words are used, which, it seems to us, show the intention of the legislature to give a fee for each person committed. The language is, "for taking body into custody or conveying to jail on mittimus or warrant one dollar." The fee is not "for executing the commitment" but for conveying the prisoner to jail "on the commitment." It was decided in Wilhelm v. Fayette Co., 168 Pa. 462, that the language in the sheriff's fee bill of 1868, "fee on commitment for any criminal matter, fifty cents" entitled the sheriff to the fee for each person committed, where more than one person was named in the commitment. The language of the act of 1893 makes it quite as clear, if not clearer, that the legislature intended to give constables a fee of $1.00 for each "body" conveyed to jail on a commitment.

5. No specific fee is allowed by the act of 1893 to justices of the peace for "backing warrant;" but it is a duty which is required of them, and while the supposed right to compensatory fees, recognized in the early history of the commonwealth, was wiped out by the act of 1814 and later decisions (Irvin v. Commissioners, 1 S. & R. 505; Lyon v. Commissioners, 4 S. & R. 442), yet it would seem that a justice is entitled to a fee for this service under the clause of the act which reads: "The fees for services not herein specially provided for shall be the same as for similar services." This clause of the act is to be con-

strued strictly but not so strictly as to nullify it. It is not to be construed so as to open the door to the reinstatement of the ancient practice of allowing compensatory fees. For all services which a justice may render in a case instituted before him, it is safe to say the specific fees allowed by the fee bill were intended to be full compensation. But where a justice "backs" a warrant issued by a justice of another county he, in effect, reissues it, and thereby gives the officer bringing it, authority to execute it and to bring the prisoner before him or some other magistrate of the county where the warrant was indorsed: Act of March 31, 1860, sec. 3, P. L. 427. This service is closely similar to the issuing of a warrant, and as no specific fee is provided for it, we think the justice may lawfully charge the fee allowed for issuing warrant, namely fifty cents. It follows that the plaintiff is entitled to reimbursement for the fee he was compelled to pay the justice.

6. In addition to the fees allowed by statute for executing warrant, and for traveling expenses, the plaintiff claims $3.00, being the railroad fare of three prisoners arrested in Indiana county, on a warrant charging a felony, issued by a justice of the peace of Armstrong county. It is argued that the second clause of the first section of the Act of March 31, 1860, P. L. 427, covers the case. It reads, "and the expenses of removing any person charged with having committed an offense in one county into another county . . . . shall be paid out of the treasury of the county where the offense is charged to have been committed." This seems to apply only to the case of a removal of a prisoner from the county where the offense was committed to some other county, and we have been confirmed in this conclusion by an examination of the previous legislation which it supplied. The Act of September 23, 1791, sec. 14, 3 Sm. L. 37, provided, inter alia, that whenever, by order of the governor or one of the judges of the Supreme Court any person charged with having committed an offense in one county should be removed into another county "for safe custody" the expenses of such removal should be paid by the state treasurer on the order of the governor. This latter provision was repealed by the Act of April 20, 1846, sec. 2, P. L. 400, and the county in which the offense was committed made liable. This provision of the act of 1846 was incorporated in the section of the Crim-

inal Procedure Act of 1860 first quoted (Report of the Commissioners, 39); and cannot fairly be construed to apply to an arrest made on a warrant issued by a justice of the peace of one county and backed by a justice of the peace of another county. It is, therefore, unnecessary to determine whether or not the term "expenses" as used therein means more than the statutory fees of the officer. It follows that the case before us is not' distinguishable from an arrest within the limits of the county where the offense was committed and is governed by the same' rule. "In this state we have always proceeded on the safe principle of requiring statutory authority, either in express terms or by necessary implication for all such claims upon the public treasury:" Wayne Co. v. Waller, 90 Pa. 99; Lehigh Co. v. Semmel, 124 Pa. 358. It is not pretended that there is any statute making the county liable in such a case for the amount paid by a constable for the transportation of the prisoner to the place of hearing. Nor is there such a necessary implication of liability as there was in the exceptional cases of Commissioners v. Hall, 7 W. 290, Allegheny v. Watt, 3 Pa. 462, and Richardson v. Clarion, 14 Pa. 198. It was the constable's duty to bring the prisoners before the magistrate, and for this service the statute gives him certain fees. He cannot hold the county liable for more because he chose to bring them in a particular way, which compelled an outlay of money on his part. There may be individual cases of hardship as the result of holding that the officer is not entitled to reimbursement of the money he has actually expended for railroad fare of prisoners arrested by him, but this is a matter for the legislature to consider, and cannot be made the safe basis of a decision holding the county liable for such expenses. Presumably the legislature thought, that, taking one case with another, the fees allowed for the several services a constable is called upon to perform would, in the long run, be sufficient to compensate him, and also to cover the ordinary expenses incident to the performance of them. If this has turned out to be a mistaken view of the matter the power to correct it is vested in the legislature and not in the courts. "The courts have no power to make or amend fee bills."

7. The furnishing of meals to prisoners under arrest is not an expense incident to the execution of the warrant, and this claim is plainly distinguishable from that for expenses

incurred in conveying the prisoner to the place of hearing. The legislature never intended that the prisoner might be starved, nor that the expense of feeding him should be borne by the officer. If a case should arise where the feeding of the prisoner was a plain necessity we do not say that the county might not be liable upon the principle recognized in Richardson v. Clarion Co. supra. It must not be supposed, however, from this remark, that the constable has the powers of a general agent of the county in this particular; it is only in a very clear case of necessity that the principle referred to applies. We are not prepared to say that the court erred in not holding that this was such a case.

The counsel for the defendant states that the liability of the county for the charges for advertising election and delivering certificates of election (sixth and seventh assignments) was not disputed in the court below and is not denied here. It was conceded, he says, that the Act of June 13, 1840, sec. 11, P. L. 687, under which they are claimed is general, and its repeal was not necessary in order to attain that uniformity which was the object of the act of 1893, and hence it is not to be implied. Because of this concession, doubtless, the learned judge apparently assumed that the items mentioned would be paid by the county, and that the judgment of the court concerning them was not asked. If these items were not in dispute the case stated ought to have been amended at the hearing in the court below. This can be done when the record is returned.

The second, third, fourth, ninth and tenth assignments are overruled, and the judgment of the court as to the items referred to on said assignments is affirmed. The first, fifth and eighth assignments are sustained, and the judgment of the court as to the items referred to in said assignments is reversed. The record is remitted to the court below with directions to permit the case stated to be amended as to the items referred to in the sixth and seventh assignments of error in accordance with the agreement of the parties, and to enter judgment on the same as amended in accordance with this opinion; the costs to be paid by the defendant.

NOTE, cf. Act of February 11, 1899, entitled " An act to fix, regulate and establish the fees to be charged and received by constables in this commonwealth."