## Commonwealth *v.* James E. Bell, Appellant.

*Criminal law—Murder—Evidence.*

On the trial of an indictment for murder, the evidence for the commonwealth tended to show that the prisoner lived with the deceased, who was not his wife, that he had made frequent threats to kill her, that he had previously struck and beaten her, that on the evening of the killing he had bought and given her liquor, that later in the evening he left his house and departed to another state where he remained until he was arrested; that an examination of the person of the deceased showed well defined, plainly visible thumb and finger marks, deep indents upon the neck of the deceased, above the windpipe, that her facial appearance warranted the experts in expressing an opinion that her death was due to strangulation, caused by the application and continuation of a powerful external force which left its impress on her neck. *Held,* that the evidence was sufficient to sustain a verdict of murder in the first degree.

Argued Oct. 1, 1894.    Appeal, No. 2, May T., 1894, by defendant, from O. & T. Dauphin Co., on verdict of guilty.    Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Affirmed.

Indictment for murder.

At the trial evidence was offered by the commonwealth which tended to show that, prior to April 10, 1893, the prisoner, James E. Bell, a colored man, lived with Ellen Miller, a white woman, in the borough of Steelton; he had frequently threatened to kill her, and on several occasions had choked her, and threatened to throw her into the canal.    On the evening of April 10, 1893, he brought some liquor to his house, and gave it to Ellen Miller and her sister Mrs. Emma Eichelberger, who was in the house at the time.    Later in the evening a loud scream was heard in the house, and shortly afterwards Bell came out, left the house and went to Maryland where he was arrested four months afterwards.    Early the next morning the dead body of Ellen Miller was found on a bed in the front room, with well defined thumb and finger marks upon her neck above the windpipe.    Emma Eichelberger was found in a drunken stupor, her head resting on her sister's side.

The court submitted the case to the jury.    No points were presented.

Verdict, guilty, and judgment of sentence thereon.

*Errors assigned* were, (1, 2) that the evidence was not suffi-
cient to warrant the verdict; (3) in not fully instructing the
jury on the law and facts.

*Charles B. McConkey, Paul A. Kunkle* and *Edgar L. King*
with him, for appellant, cited, Act of Feb. 15, 1870, P. L. 15:
Meyers v. Com., 83 Pa. 131.

*Meade D. Detweiler*, for appellee, not heard, cited: Hopkins
v. Com., 50 Pa. 9; McCabe v. Com., 8 Atl. R. 46; Grant v.
Com., 71 Pa. 507; act of March 31, 1860, P. L. 382; McGin-
nis v. Com., 102 Pa. 71; Brandt v. Com., 94 Pa. 290; Com. v.
Ware, 137 Pa. 465; Staup v. Com., 74 Pa. 458; McCue v. Com.,
78 Pa. 185; Meyers v. Com., 83 Pa. 131; McMillan v. Com.,
144 Pa. 610; McMeen v. Com., 114 Pa. 304; Com. v. Cross-
mire, 156 Pa. 304; Kerr on Homicide, 461; Jefferds v. People,
5 Parker's Cr. Cas. (N. Y.) 552; Com. v. Brum, 58 Pa. 9;
Keenan v. Com., 44 Pa. 55; Killer v. Com., 124 Pa. 92; Lan-
ahan v. Com., 84 Pa. 80.

OPINION BY MR. CHIEF JUSTICE STERRETT, Nov. 5, 1894:
Our consideration of the record and the testimony sent up
therewith has satisfied us that "the elements of murder in the
first degree were proved to exist," in this case.    The testimony
tends to prove not only that the deceased, Ellen Miller, was
cruelly and brutally murdered, but that the prisoner was the
guilty agent, and that, at the time of committing the felony, he
intended to kill her.    It is unnecessary to refer in detail to the
testimony tending to establish the corpus delicti, the prisoner's
guilty agency in the matter, or the degree of the felony.    In
connection with other evidence in the case, the testimony of
physicians,—who were present at the post mortem examination,
—as to the manner in which the killing was accomplished,
tended to show that Ellen Miller was murdered, and that her
slayer intended to take her life.    According to their testimony,
the well defined, plainly visible thumb and finger marks—
"deep indents"—upon the neck of the deceased, above the
windpipe, her facial appearance, etc., warranted them, as sci-

entific experts, in expressing the opinion that her death was due to strangulation, caused by the application and continuation of the powerful external force which left its impress on her neck.   One of the witnesses describes her facial appearance thus : " There was a distinct expression of anguish, which when recognized has a very peculiar,—that staring look, with eyes wide open and the pupils dilated, that is very striking: then there was on one side of the larynx or the throat a deep indent, of probably half an inch at least deep, indent probably a quarter inch, a thumb mark, and on the other side the finger marks themselves: some blood oozed from her mouth had stained her lips : her tongue lay forward in her mouth against the teeth : then of course those different, many other marks, the wrenching of the left arm which was severely twisted."

All the facts and circumstances disclosed by the testimony, including the prisoner's previous threats to kill deceased, his subsequent flight, etc., etc., not only point to the conclusions contended for by the commonwealth, but they appear to be inconsistent with any reasonable hypothesis of innocence based upon the testimony.   Again, if the witnesses be correct as to the manner in which the killing was accomplished, it indicates deliberation and premeditation.   The facts were all for the exclusive determination of the jury ; and to them they · were fairly submitted in a clear, adequate and decidedly impartial charge, to which no just exception can be taken.   Further comment is deemed unnecessary.

It follows from what has been said that the first and second specifications are not sustained.   As has been already intimated, the charge is impartial and fully adequate, and hence the third and last specification must also be dismissed.

The learned counsel, who so ably and zealously represented the prisoner, have the satisfaction of knowing that they have left nothing undone that could possibly redound to his benefit.

A careful examination of the record has failed to disclose any error that would justify us in reversing the judgment of the court below.   The judgment is therefore affirmed ; and it is ordered that the record be remitted to the court of oyer and terminer, for the purpose of execution.