# Commonwealth v. Bentley, Appellant.

*Criminal law—Murder—Challenges by Commonwealth—Scruples—Examination on voir dire—Discretion of court—Review on appeal—Killing by accomplice—Act of May 14, 1925, P. L. 759.*

1. A juror who declares when he is examined on his voir dire, that he has no scruples against capital punishment generally, but

that his conscience would not permit him to find a verdict carrying a death penalty, where the actual killing was not done by defendant himself, but by an accomplice, is disqualified to sit as a juror since the passage of the Act of May 14, 1925, P. L. 759, giving to juries the power to fix the penalty in cases of conviction of murder of the first degree.

2. If the evidence justifies a finding of first degree murder, the juror should be mentally prepared to make such determination, though death may follow, for it is only after such conclusion is reached that the jury as a whole must consult and decide whether a less punishment than death is to be imposed.

3. A juror who has conscientious scruples upon any subject, which prevents him from standing indifferent between the government and the accused, and trying the case according to law, is not impartial.

4. The defendant has the legal right to reject jurors called, but not to select those by whom he would be tried.

5. The determination of the availability of a juror for service is largely within the discretion of the court below, and its action will not be reversed in the absence of palpable error.

6. The examination of a proposed juror by the Commonweatlh to determine whether he could conscientiously render a verdict such as the law contemplates, is not prejudicial to the defendant, in that it gives to the Commonwealth an indication as to the likelihood of securing a favorable verdict from the person interrogated.

Argued November 22, 1926.    Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

Appeal, No. 309, Jan. T., 1926, by defendant, from judgment of O. & T. Phila. Co., May T., 1926, No. 258, on verdict of guilty of murder of the first degree, in case of Commonwealth v. Harry Bentley, alias Harry Bockman, alias Harry Backman.    Affirmed.

Indictment for murder.    Before Taulane, J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree with death penalty, on which sentence of death was passed. Defendant appealed.

*Errors assigned* were rulings on challenges, refusal of new trial and judgment, quoting record.

*Henry Stevenson* and *C. Stuart Paterson, Jr.,* with them *Louis F. McCabe,* for appellant.—The right to have a case tried by an impartial jury does not give a right to the service of any particular individual,—the thing which the law especially seeks to guard is the right to reject, not to select: Com. v. Henderson, 242 Pa. 372; Com. v. Minney, 216 Pa. 149; Com. v. Morgan, 280 Pa. 67; Com. v. Brown, 23 Pa. Superior Ct. 470; State v. Comery, 78 N. H. 6; State v. Greer, 22 W. Va. 800; DeMato v. People, 49 Colo. 147.

The robbery or attempt to commit the same was completed at the time the participants therein abandoned their automobile and the money and left the scene.

*Charles Edwin Fox,* District Attorney, with him *Charles I, Thompson,* Assistant District Attorney, for appellee.—Commonwealth's challenges for cause were properly sustained: Com. v. Gelfi, 282 Pa. 434; O'Mara v. Com., 75 Pa. 424; Com. v. Sushinskie, 242 Pa. 406; Com. v. Henderson, 242 Pa. 372; Com. v. Crossmire, 156 Pa. 304.

The homicide was perpetrated while appellant was engaged in the commission of a felony.

OPINION BY MR. JUSTICE SADLER, December 6, 1926:

The defendant, Bentley, was indicted with three others, Doris, Curry and Juliana, for the killing on May 4, 1926, of Harry M. Cooper, a policeman, in the course of an attempted robbery. Separate trials were asked, and granted, and all were convicted of murder of the first degree. Each has appealed to this court from the sentence of death imposed, and different reasons have been assigned for setting aside the judgments rendered, which will be considered in turn. The four cases were argued together, and some of the complaints are common

to two or more. Practically the same description of the events leading to Cooper's death was given at each trial, and one statement of the history of the crime will suffice so far as our consideration of the case is concerned.

Appellants, and possibly another one, not apprehended, had learned from observation the manner of transporting funds by the Olney Bank & Trust Co. from its main office at 5th Street and Tabor Road in Philadelphia to its depository, the Corn Exchange National Bank in the central city district, and that the van so employed would stop at the Mascher Street and Wyoming Avenue branch of the former institution for additional remittances. Between 9:30 and 10 o'clock in the morning of May 4th it was sent out with a police guard, carrying $80,000 in paper money and $317 in silver, and stopped for the taking on of an additional sum at the usual place.

It had been followed along the street by a sedan containing five passengers, four of whom were the defendants. When within twenty feet of the bank's car, then standing in front of the building on Mascher Street, as was customary, defendants' auto slowed down or stopped, and the occupants, all masked and heavily armed, leaped from it and began shooting at those having in charge the van in front. One of the bandits seized the bags of currency contained therein, and removed them to the sedan, to which the defendants then ran, continuing the fusillade. A policeman stationed near by observed the attempted holdup, and by use of his revolver disabled the defendants' motor so that its driver was unable to start. Failing to move the sedan, the occupants abandoned it, leaving therein some of the weapons and ammunition which they had provided, and attempted to retreat, while firing their guns and revolvers. Bystanders were attracted by the disturbance, and one of the defendants, Doris, still armed, was captured.

The other three took forcible possession of a horse-drawn milk wagon, and made an effort to escape therein. Cooper, the deceased, mounted a passing truck, and fol-

lowed closely. He was hit and killed by one of the many bullets fired by defendants, or some of them, from the vehicle in which they were riding. Juliana jumped off just before the fatal shot and was apprehended. Bentley and Curry then abandoned the wagon, and ran through a near-by house, and within a few minutes were seized.

The jury found in each case that the defendants had conspired to take with force and carry away the money secured, having prepared to do so by the use of such violence as was requisite to carry out their design, and the murder with which they stand charged was committed while carrying out the premeditated plan. Appellants do not dispute that the facts were proven as stated, but insist certain trial errors were committed, which make necessary a reversal of their conviction. It is urged, further, that the evidence does not justify the judgments entered, except as to the one who actually fired the shot which resulted in the death of Cooper.

The complaint in the Bentley Case, which we are now considering, is based largely upon the action of the learned court below in sustaining challenges for cause to certain jurors, and finds expression in the first thirteen assignments of error. The prospective juror was in each instance examined on his voir dire, and indicated that he had no scruples against capital punishment generally, but his conscience would not permit him to find a verdict which might carry such penalty, in a case where the blow, actually causing the death, had been delivered by an accomplice engaged in a common criminal enterprise, and not by the defendant personally. The Commonwealth objected to the retention of individuals so declaring, and they were excused. In so directing, it is alleged error was committed, but we cannot agree with this conclusion.

It is clear that, under the circumstances suggested, a conviction of murder of the first degree could properly be rendered, as we have pointed out in the opinion this

day filed in Com. v. Doris. If the evidence warranted
the rendition of such a verdict then a sentence of death
might follow, dependent upon the exercise of the discretion of the jury, as a whole, as to the wisdom of imposing the less punishment of life imprisonment, as permitted by the Act of May 14, 1925, P. L. 759, which
provides, "That every person convicted of the crime of
murder of the first degree shall be sentenced to suffer
death in the manner provided by law, or to undergo imprisonment for life, at the discretion of the jury trying
the case, which shall fix the penalty by its verdict."

When the juror stated he could not find a verdict which
might mean the imposition of the death penalty, he disqualified himself from serving. "A juror who has conscientious scruples upon any subject which prevents
him from standing indifferent between the government
and the accused, and from trying the case according to
law, is not impartial": Logan v. U. S., 144 U. S. 263,
298. So, if he declares that he could not make a finding,
which necessitated the severest penalty, where the evidence was circumstantial (Com. v. Sushinskie, 242 Pa.
406), or could not apply in such case the ordinary rule
as to reasonable doubt but must be convinced beyond
any doubt (Com. v. Gelfi, 282 Pa. 434), or would not
follow the rules of law,—in this case that the conspirator
was equally guilty with the accomplice who shot,—(35
C. J. 356), or, though not opposed to capital punishment
generally, yet was so opposed under the facts involved
in the particular case (35 C. J. 355), he should not be
accepted. "Anyone who, in any possible way, no matter
how honestly, has been warped by any preconceived
opinion which may affect his verdict, or has made up his
mind what verdict he is to give, is.....excluded": Com.
v. Lesher, 17 S. & R. 155, 156.

It has long been held that conscientious scruples
against the imposition of the death penalty disqualified
a juror where such punishment has been fixed by the
statute defining the crime: Com. v. Lesher, supra; Com.

v. Valsalka, 181 Pa. 17. The argument is advanced, however, that this rule has necessarily been modified by the Act of 1925, above referred to, and since the jury may, upon conviction of first degree murder, direct imprisonment for life, such scruples should not furnish reason for sustaining a challenge for cause. This statute did not abolish capital punishment, but it is still to be imposed if the crime is of such a character as to warrant it. "Upon this issue the State as well as the accused is entitled to the exercise of the judgment of the jury. A juror who declares that he cannot exercise judgment on that question is not indifferent and should not be permitted to serve. Instead of going to the jury room prepared to weigh the evidence and consider argument, he would go with a mind fully made up without regard to what had been put before him on the trial": State v. Comery, 78 N. H. 6. If the evidence justifies a finding of first degree murder, the jury should be mentally prepared to make such determination, though death may follow, for it is only after such conclusion is reached that the jury as a whole must consult and decide whether a less punishment than death is to be imposed. We find no decision in Pennsylvania in which the proposition has been considered, but the rule applied by the court below is supported by the great weight of authority in other jurisdictions where the question here raised has been discussed: Hardy v. U. S., 186 U. S. 224; State v. Green, 22 W. Va. 800; State v. Comery, supra; Rhea v. State, 63 Neb. 461; People v. Rollins, 179 Cal. 793; Demato v. People, 49 Colo. 147; 16 R. C. L. 271; Ann. Cases, 1912 A. 786, note.

No complaint is made that the jury finally selected was not fair and impartial. The defendant had the legal right to reject jurors called, but not to select those by whom he would be tried: Com. v. Morgan, 280 Pa. 67. It will be remembered that here the individuals were dismissed for what was deemed good cause and not passed, so that defendant would have been compelled to

make use of one of his peremptory challenges, if he wished to exclude the juror,—an important distinction: Com. v. Mosier, 135 Pa. 221. The determination of the availability for service was largely within the discretion of the court below (Com. v. Henderson, 242 Pa. 372; Com. v. Eagan, 190 Pa. 10), and its action will not be reversed in the absence of palpable error (Com. v. Crossmire, 156 Pa. 304; Com. v. Gelfi, supra), and only when injury appears: Com. v. Minney, 216 Pa. 149.

Appellant claims the queries here as to capital punishment had a prejudicial effect, in that an indication was given to the Commonwealth as to the likelihood of securing a favorable verdict from the one interrogated, but to this we are unable to agree. In conducting the preliminary examination, considerable latitude must be permitted to elicit the necessary information, but it is to be strictly confined to inquiries disclosing qualifications, or lack of them, and not extended so as to include hypothetical questions, when their evident purpose is to have the jurors indicate in advance what their decisions will be under a certain state of the evidence or upon a certain state of facts, and thus possibly commit them to definite ideas or views when the case shall be finally submitted to them for their decision. The purpose of the examination in the present case was not to obtain information as to the verdict which the juror would render upon the production of certain evidence, but whether he could consistently render a verdict such as the law contemplated, if the testimony established guilt beyond a reasonable doubt.

On behalf of defendant it is further insisted that he could not be convicted of the murder of Cooper, since the shot which killed the latter, was fired by a companion, in the milk wagon, Curry. A discussion of the legal responsibility of the accomplice under such circumstances will be found in the opinion herewith filed in the case of Doris, one of the parties indicted with Bentley, and what is there set forth need not be repeated here.

It is sufficient to say that the court below committed no error in imposing sentence for murder of the first degree. All of the elements of this offense were proven, and we see no merit in any of the matters assigned as error.

The judgment is affirmed, and it is directed that the record be remitted for the purpose of execution.