## Commonwealth v. Haley, Appellant.

Argued April 12, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*David Levinson,* for appellant.

*James W. Tracey, Jr.,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY MR. JUSTICE PATTERSON, May 28, 1948:

Edward A. Haley was indicted and tried for the murder of one Joseph S. Connor. A jury returned a verdict of not guilty of murder but guilty of voluntary manslaughter. Appellant's motion for a new trial was dismissed and he was sentenced to the State Industrial Home for Boys at Camp Hill, Pennsylvania. Appellant contends that the Commonwealth has utterly failed to prove the cause of death and, therefore, the trial judge erred in refusing to direct a general verdict of not guilty.

One June 8, 1947, at about 12:00 midnight, a group of young people who had been attending a wedding reception in one of the rooms of a building located at the northeast corner of Eleventh and Spruce Streets in the City of Philadelphia, were standing directly in front of the main entrance of the building waiting for a taxicab. Oscar Haley, father of appellant and caretaker of the building, emerged from the Eleventh Street entrance, approached the group and stated that some glasses and a pitcher had been removed and asked that they be returned. James O'Hara, one of the group, asked Haley if he wanted to search him. Haley had started up the steps and O'Hara followed him, whereupon Haley turned around and struck O'Hara. Haley quickly entered the building and locked the door. Thereupon, about twenty of the group proceeded to the Eleventh Street entrance and saw that this door was also locked. The door was knocked down and four or five of the group entered the building.

Appellant, 16 years of age, lived with his parents on the fourth floor of this building. When the dispute arose, he heard his mother scream. He stated that he ran "up-

stairs to the attic and I got my knife and stuck it down my trousers behind my belt and I ran downstairs". The knife, a Japanese souvenir which appellant had picked up in a junk yard, had a blade 8½ inches long. Joseph F. Connor, deceased, headed the shouting crowd and advanced upon appellant and his family with a heavy piece of wood which was part of the paneling broken out of the door. Connor was about to strike James Herbert Haley, brother of the appellant, when appellant, in an effort to hold off the crowd, took out the knife and stabbed Connor in the lower left chest between the tenth and eleventh ribs. The blade penetrated Connor's body 5½ inches and pierced his spleen causing it to hemorrhage severely. He was taken to Jefferson Hospital where about five hours later a splenectomy was performed in an unsuccessful effort to stop the hemorrhage. Connor died thirty hours after the stabbing. No autopsy was performed by the coroner's physician.

It is not asserted that appellant did not have a fair trial or that the charge of the trial judge was not fair, full and complete. The sole question before this Court is whether the evidence is sufficient to support a finding that death resulted from the appellant's wrongful act. Appellant contends that failure of the coroner to perform an autopsy is fatal to the Commonwealth's case. In other words, it is contended that unless there has been an autopsy which proves beyond a reasonable doubt that the injury and death are directly connected, the latter logically resulting from the former, the trial judge must direct a verdict of not guilty.

The corpus delicti in homicide cases may be established without aid of testimony appertaining to a coroner's autopsy. In *Commonwealth v. Scovern*, 292 Pa. 26, 33, 140 A. 611, this Court said: "Corpus delicti consists of a criminal act, a resulting death, and the agency of the accused in its commission. It must appear that deceased died from the effects of a wound, unlawfully inflicted by the person charged: See Wharton on Homi-

cide, 3d ed., p. 897. All of these elements were present in this case. We need not recite the evidence. Proof of corpus delicti is not weakened by the fact that the medical testimony shows a disease or various diseases, the product of the wound itself, combined to produce death. It was of no consequence that the deceased died of pneumonia or suppurated splenitis, if either were superinduced by the bullet wound, or from the operation deemed necessary to save the victim's life: Com. v. Eisenhower, 181 Pa. 470."

Careful examination of the original record reveals ample evidence from which a jury could properly conclude that death resulted from a criminal act and that appellant was the perpetrator thereof. The fact of death is not in issue. Neither is accused's criminal act save as it is said not to have been proven as the causal factor of death. Dr. Benjamin Gouley, the coroner's physician, testified: "The cause of death was a post-operative complication, post-operative operation following a splenectomy. A splenectomy is an operation for the removal of the spleen. The operation was performed because of a stab wound." He further testified: "I therefore can say with definiteness that death here was caused finally and ultimately as a result of a stab wound." Dr. Kenneth Fry, Assistant Professor of Surgery at Jefferson Medical College, the physician who operated on deceased, testified: "Q. In your professional judgment was it necessary to perform the operation? A. It was the only thing that could be done at that time, to operate. Q. Due to what? A. For a supposed injury of the spleen. Injuries of the spleen hemorrhage severely, so in order to stop the hemorrhage and save life, we operated. Q. So, in an attempt to save this man's life the operation was performed? A. That is correct. Q. Will you please tell us what you learned as a result of the operation? A. Yes, sir. We learned, first of all, that a wound went completely through the spleen, that is, both front and back. . . . Right through the spleen. The diaphragm

on that side, which is the muscle that separates the chest from the abdomen, had a laceration in it, an opening in it, and then the wound of the chest wall communicated directly into the chest cavity through the diaphragm and through the spleen. Q. That was what you learned and discovered as a result of the operation? A. That's right. Q. So, in your professional judgment, and after examining the body and the wound carefully, was it necessary to perform the operation in an attempt to save this young man's life? A. I believe so. Q. In your judgment? A. Yes, sir."

The charge of the trial judge with regard to the cause of death was full and no criticism is made with regard thereto. Whether the Commonwealth proved this criminal agency and causal connection was properly left to the jury to determine. The jury was instructed: "Members of the jury, there was a question presented in this case as to whether or not death came from the wound. There is no doubt that he was stabbed, and there appears to be no doubt that an operation was necessary. Dr. Fry, who was the assistant professor of surgery at Jefferson Hospital, which is admittedly a very good hospital, said that he considered it necessary to attempt to save the young man's life. He told you of the circumstances, he told you of the cutting, and how far it had gone through—that it came through the chest wall, lacerated and cut through the diaphragm, and cut entirely through the spleen—and that he thought it advisable to perform an operation in an attempt to save his life. . . . So that in this case, so far as the connection of the wound and the death is concerned, you have a young man of 19, there is no evidence at all of any physical ill-being prior to his death, you have the cutting and operation, and thirty-six hours later you have his death. I think, in good human experience, you would have a right to say,— that if not for the cutting there wouldn't be any need for an operation, and therefore there would be no death. There is no assertion here that there was negligence in

the performance of the operation. . . . So in this case, members of the jury, while I leave it entirely to you to find the connection between the wound and the death, I say to you—and I think it is a fair comment, but you can entirely disregard it—that you can well find beyond a reasonable doubt that the death and the wound were connected, and so far as I am concerned, that would be the least consideration in the case. The important considerations are the other circumstances. However, it is entirely up to you, and you can disregard my comment."

There was no error in this charge and the evidence supports the jury's finding.

No case has been cited by counsel nor has our research discovered any which holds that a coroner's autopsy is a necessary prerequisite to a conviction for felonious homicide. That it is advisable must be conceded; that it is a necessity has never been so determined. The learned trial judge in his charge to the jury said: "It is true that there should have been a post-mortem here. . . ." *People v. Miller*, 257 N. Y. 54, 61, 177 N. E. 306, cited by appellant, does not support his contentions. In that case Chief Judge CARDOZO said: "There is indeed a presumption in the absence of inculpatory evidence that death was not caused by the criminal act of the defendant, for this is merely a restatement in another form of the presumption of innocence." The *inculpatory evidence* in the instant case, fully set forth, supra, has convinced the jury to find beyond a reasonable doubt that the criminal act of appellant was the cause of Connor's death. That finding will not be set aside.

Appellant cites *Allegheny County v. Shaw*, 34 Pa. 301; *Northampton County v. Innes*, 26 Pa. 156; *Allegheny County v. Watts*, 3 Pa. 462; and *Commonwealth v. Harman*, 4 Pa. 269, as controlling authority for the requirement of a coroner's autopsy. These cases do not so hold. Nor do *Hirko v. Reese*, 351 Pa. 238, 40 A. 2d 408, and *Marvin v. Monroe County*, 154 Pa. Superior

Ct. 75, 35 A. 2d 781 so hold. The Act of 1935, P. L. 710, Section 2, 16 PS Section 3161, while placing upon a coroner the duty to investigate all cases where death is sudden or violent or of a suspicious nature and character, does not purport to affect rules of evidence in criminal proceedings. Assuming a coroner to be lax in performance of his duties, that laxity in no way affects the burden of proof or quantum of evidence required in trials for felonious homicide.

Judgment affirmed.

DISSENTING OPINION BY MR. JUSTICE DREW:

I dissent from the opinion and decision of the majority because I am firmly convinced that the defendant, a young boy, has been unjustly and harshly dealt with. The testimony shows clearly and overwhelmingly, that he is not a murderer; that he was defending his father and their house from invasion by a dangerous and unruly crowd of about twenty people, when he struck the fatal blow. I think the facts are conclusive and show a justifiable homicide at most, and in truth a killing in self-defense.