Commonwealth *v.* Fletcher, Appellant.

Argued September 24, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*A. J. Waychoff,* for appellant.

*Glen R. Toothman, Jr.,* District Attorney, for appellee.

OPINION BY MR. JUSTICE BELL, November 12, 1956:

Defendant was found guilty of murder in the first degree and sentenced to life imprisonment for the slaying of Gerald Tanner. Defendant did not take the witness stand. He filed a motion in arrest of judgment and a motion for a new trial. He contended (1) that there was not sufficient evidence to prove the corpus delicti; (2) that the verdict was against the evidence and against the weight of the evidence and against the law; (3) that a new trial should be granted for the additional reason that two jurors should have been disqualified, and (4) that a new trial should be granted for alleged prejudicial remarks made by the District Attorney during his closing argument to the jury. We shall consider the first two contentions together.

The jury could have found from the Commonwealth's evidence and from the reasonable and legitimate inferences therefrom that the Commonwealth proved beyond a reasonable doubt the following facts:

Defendant and Gerald Tanner, the deceased, on the evening of June 11, 1954, had a fist fight outside a barroom over a married woman, Elsie, with whom each had been having relations. As a result of this fight Elsie and the defendant were arrested and put in jail. The same evening they were released, and they returned to Bobtown, Greene County. Later Elsie left defendant to go to her home with Tanner.

During the fight between the defendant and the deceased, the defendant said, "I'll get you if it's the last thing, I'll show you." After the defendant returned to Bobtown late that evening, he was seen by several witnesses at a beer garden known as Nassar's. There he discussed the fight and said: "Someone is going to pay for this." The Commonwealth then proved that the defendant returned in his automobile to his store at Bobtown about four A.M.

In the early hours of June 12th, Tanner returned from Elsie's home to his home at Cabbage Flats in Monongahela Township, Greene County. While standing before his kitchen door at about four A.M., Tanner was shot and killed from ambush by a shot gun. Mrs. Alice Tanner, his mother, saw him alive, heard a gunshot, saw him fall and held him in her arms as he died. Mrs. Jean Tanner, widow of the deceased, heard the shot, placed a a pillow under her husband's head and immediately called a doctor.

Bernice Fletcher, the defendant's wife, testified that the defendant first came home at about four A.M., got the keys for the store, left his home, and returned again about four-thirty A.M. Defendant was arrested at eight A.M. on the morning of June 12, 1954, at his home at Bobtown, Green County, which was approximately three miles from Tanner's home. At the time of his arrest he gave vague as well as contradictory accounts of his whereabouts and actions prior to and about the time of the shooting.

Elsie Mahoney testified that after she began working for the defendant, he gave her a gun and a box of shells for her protection, and that sometime later the defendant took the gun and hid it, and that she did not again see the gun. A shot gun owned by the defendant was offered in evidence at the trial. John Laskody testified that he saw the defendant when he was at Nassar's take three shot gun shells from his pocket, and state: "Someone is going to pay for this." The defendant made several contradictory statements as to where the gun and shells were located, but later showed the officers where the gun was. One of the officers testified that when he opened the gun it smelled as if it had been freshly fired.

Dr. D. L. Avner pronounced Tanner dead. He testified that he bared Tanner's chest in the position he had

fallen, and there were multiple penetrations over his chest and shoulders, and a large quantity of blood had been emitted from mouth and nostrils. John Rock obtained four pellets identified as four shot gun pellets from inside the body of the deceased in the Lucas funeral home as they were removed from the body by Doctor Ramsey. Michael Lucas, the undertaker, who was deputy coroner, testified that there were one hundred penetrations over Tanner's body, his ribs were broken, and his lungs and heart were lacerated. He also testified that after the autopsy had been performed by Doctor Ramsey, at which he was present, he prepared the certificate of death, offered in evidence as Commonwealth's Exhibit No. 13, which he identified. When this certificate of death was offered in evidence by the Commonwealth, it was admitted to show that Gerald Tanner died on June 12, 1954, of shot gun wounds on the left chest. Counsel for defendant made no objections to the offer of the death certificate except to request that the words "shot to death from ambush" be not read to the jury. This was granted. Lucas further testified: "Q. As the autopsy progressed, were you aware or did you find out of what Mr. Tanner died? A. Yes. Q. What was it? A. His heart was punctured by shot gun pellets. Q. Causing what? A. Hemorrhages."

There was overwhelming evidence from which the jury could have properly concluded that death resulted from a criminal act, namely, the unlawful shooting. The Coroner, because of his physical and mental condition, could not be produced as a witness at the trial, but as the Court said in *Commonwealth v. Haley*, 359 Pa. 477, 479, 59 A.2d 62, "The corpus delicti in homicide cases may be established without aid of testimony appertaining to a coroner's autopsy."

The Court's opinion in *Commonwealth ex rel. Lagana v. Day*, 385 Pa. 338, 123 A. 2d 172, on the subject

of corpus delicti is particularly applicable (pages 340-341):

"In Commonwealth v. Homeyer, 373 Pa. 150, 94 A. 2d 743, the head of Anna Homeyer, which was severed from her body and encased in concrete, was found in the cellar of defendant's home. We held that that was sufficient evidence without any confession and without any further evidence of the corpus delicti. The Court said (pages 156, 157):

" '. . . The Commonwealth in such a case, in order to establish the corpus delicti, must prove (1) that the alleged victim is dead, and (2) that the death occurred as a result of a felonious act. The corpus delicti, like other facts, may be shown by circumstantial evidence; it is sufficient if these circumstances are consistent with crime even though they are also consistent with suicide or accident; if it were otherwise it would be impossible in many cases, where there were no eye witnesses, to convict a criminal. Commonwealth v. Gardner, 282 Pa. 458, 128 A. 87; Commonwealth v. Turza, 340 Pa. 128, 16 A. 2d 401; Commonwealth v. Johnson, 162 Pa. 63, 29 A. 280; Commonwealth v. Coontz, 288 Pa. 74, 135 A. 538; Commonwealth v. Bishop, 285 Pa. 49, 131 A. 657; Commonwealth v. Jones, 297 Pa. 326, 146 A. 905; Commonwealth v. Lettrich, 346 Pa. 497, 31 A. 2d 155.

" 'In the leading case of Commonwealth v. Gardner, 282 Pa., supra, the Court said (page 462): "In all criminal proceedings it is incumbent on the Commonwealth to establish beyond a reasonable doubt three elements: (1) the occurrence of an injury or loss,—in homicide, a person deceased; (2) a criminal agency,—in homicide, for example, that the death was caused by a beating, gunshot or circumstances indicating a felonious act (these two combined show a crime has been committed

by someone) ; (3) that the defendant is the responsible party. Defendant contends that the crime for which he is charged was not committed . . . The person for whose death a prosecution is instituted may be alive, so evidence that he or she is in fact dead is imperative. As death may have resulted from a cause other than a felonious act, there must be evidence that it occurred under circumstances which point to the commission of a crime. In this manner the corpus delicti is shown . . . 4 Wigmore, Evidence, 2d ed., sec. 2072, pp. 410, 412; Grant v. Com., 71 Pa. 495, 505; Johnson v. Com., 115 Pa. 369, 391; Cox v. Com., 125 Pa. 94, 102; Com. v. Bell, 164 Pa. 517; Com. v. Russogulo, 263 Pa. 93, 108. . . It sometimes happens the circumstances attending the act may be consistent with crime, suicide or accident. In such cases, the corpus delicti is proven where the circumstances attending the death are consistent with crime, though they may also be consistent with accident (Commonwealth v. Johnson, 162 Pa. 63), or suicide (Zell v. Com., 94 Pa. 258), and it is not necessary to show by affirmative proof that the latter two possibilities do not exist before evidence as to who did the act is admitted: Com. v. Puglise, supra, 238." ' "

We are convinced (1) that the evidence was sufficient to justify a conviction of murder in the first degree, and (2) that there is no merit in the defendant's contentions that the Commonwealth failed to prove the corpus delicti or that the verdict was against the evidence or against the weight of the evidence or against the law.

Defendant contends that a new trial should be granted because the District Attorney in his closing argument to the jury called attention to the fact that defendant had not testified in his own behalf. That contention is inaccurate and untenable. These are the facts:

The Commonwealth offered in evidence certain plaster casts of footprints alleged to have been defendant's, taken from the garden adjacent to the place of shooting. The District Attorney, in his closing remarks to the jury, directed the jurors' attention to defendant's peculiar stride and its length as they had observed him entering and leaving the court room, and argued that the footprints showed that the person making them had a peculiar walk or run or stride. This was not a statement or the legal equivalent of a statement that defendant had failed to take the stand or testify. Actually it was the defendant's counsel who first referred to the fact that the defendant had not taken the witness stand. Defendant's counsel said that defendant was not bound to testify against himself in any respect, to which the District Attorney responded that under the law he, the District Attorney, had no right to comment on whether the defendant did or did not take the stand. Moreover, the trial Judge in his charge to the jury said: "The Commonwealth having brought a charge of murder against the defendant, was challenged to produce its proof when the defendant pleaded not guilty. He is not obliged to take the stand or offer a single witness in his behalf. The law presumes, that is, take it for granted, that he is innocent until the Commonwealth has proved him guilty beyond a reasonable doubt." There is absolutely no merit in defendant's contention. Cf. *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A. 2d 820; *Commonwealth v. Bolish*, 381 Pa. 500, 522, 113 A. 2d 464. In *Commonwealth v. Kloiber*, the Court said (page 420) : " '. . . The statute does not prohibit a mere reference to the fact that a defendant has not taken the witness stand, Com. v. Nelson, 294 Pa. 544, 144 A. 542; Com. v. Yollin, 115 Pa. Superior Ct. 215, 175 A. 429; the prohibition is against adverse comments on the part of the court or prosecutor . . .' "

Finally, the defendant contends that a new trial should be granted because Jurors Nos. 1 and 7 should have been disqualified. The Act of May 17, 1939, P.L. 157, §9, 17 PS 1340, provides: "After jurors are sworn without objection all objections to their qualifications as prescribed by this act or to the manner of their selection, drawing, or summoning shall be deemed to have been waived. No indictment can be attacked or verdict challenged by reason of any juror's disqualification under this act, or any irregularity in the manner of selecting, drawing, or summoning jurors unless due objection is made before said alleged disqualified, or illegally selected jurors are sworn." Since defendant made no objection to the Court's failure to discharge these jurors until after the jurors had been sworn, the verdict cannot be challenged because of any juror's disqualification: *Commonwealth v. Sydlosky*, 305 Pa. 406, 158 A. 154; *Commonwealth v. Peronace*, 328 Pa. 86, 195 A. 57; *Commonwealth ex rel. Luzzi v. Tees*, 176 Pa. Superior Ct. 528, 533. Even apart from the Act of 1939, the fact that juror No. 1 was the daughter of a county detective, and juror No. 7 was between a fifth and fifteenth cousin of the deceased (who lived 25 miles apart and had never seen or known each other during their lives) would not be sufficient to justify disqualification for cause: *Commonwealth v. Peronace*, 328 Pa., supra.

In the *Peronace* case this Court held that the relationship of a juror to a county detective was not cause for disqualification, and said (pages 91-92) : ". . . The other challenges, in the main, were based on the fact that the jurors were either relatives of the county detective, who was the active prosecutor in the case, or political allies of the district attorney. All of the jurors stated they had formed no opinion on the case. No sound reason was shown for excluding them. 'The test of dis-

qualification is the juror's ability and willingness to eliminate the influence of his scruples and render a verdict according to the evidence, and this is to be determined by the discretion of the trial judge, based upon the juror's answers and demeanor. . . . Nothing short of a palpable abuse of discretion justifies a reversal in passing on a challenge for cause': Com. v. Gelfi, 282 Pa. 434, 437, 128 A. 77, 79; Com. v. Bentley, 287 Pa. 539, 135 A. 310."

The language of the Court in *Commonwealth v. McGrew*, 375 Pa. 518, 525, 100 A. 2d 467, is likewise applicable in the instant case: "The fact that a juror has read or heard about a case and has an impression or an opinion, or a prejudice is not ground for rejection for cause if he testifies and the Court believes that his opinion is not fixed and that he can and will make up his mind solely from the evidence which will be presented at the trial of the case: Com. v. Crossmire, 156 Pa. 304, 308, 27 A. 40; Com. v. Nye, 240 Pa. 359, 370, 87 A. 585; Com. v. Eagan, 190 Pa. 10, 42 A. 374; Com v. DePalma, 268 Pa. 25, 100 A. 756."

We find no merit in any of the defendant's contentions.

Judgment affirmed.