Hirko, Appellant, *v.* Reese.

Argued Dec. 4, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*John E. Cotsack,* for appellant.

*R. Lawrence Coughlin* and *John E. Morris, Jr.,* for appelle, were not heard.

OPINION BY MR. CHIEF JUSTICE MAXEY, January 2, 1945:

This is an appeal from the judgment of the court below deciding against the plaintiff the questions of law raised by the affidavit of defense. The plaintiff, who is

the widow of John Hirko, sued the Coroner of Luzerne County in an action of trespass to recover damages upon the allegation that the Coroner improperly authorized and directed an autopsy to be performed upon the body of her husband.

At about 6:25 P.M. on August 23, 1943, while plaintiff's husband was working in a mine, he collapsed and immediately thereafter died. His body was taken to the Hazleton State Hospital and there the defendant caused an autopsy to be performed on it to determine the cause of death. The plaintiff averred that the autopsy was performed without her knowledge or consent and against her wishes; that the Inspector of Mines was not present at the autopsy and did not authorize it; that the defendant in causing the autopsy to be performed acted arbitrarily and negligently, and that there were no circumstances attending the death of her husband that justified the autopsy. Plaintiff also averred that the defendant's deputy, John J. Salvator, who was representing the defendant, refused to surrender the body of plaintiff's husband to plaintiff's agent, one John J. Burcin, an undertaker, who was delegated by the plaintiff to take charge and custody of same and who requested the body from defendant's deputy on plaintiff's behalf.

The Act of July 12, 1935, P. L. 710, Sec. 2; 16 P.S. Sec. 3161, provides as follows:

"It shall be the duty of the coroner or the deputy coroner of any county in this Commonwealth, in all cases where death is sudden or violent or is of a suspicious nature and character to cause a careful investigation of the facts concerning said death to be made, to ascertain whether the death was due to other than natural causes, and to make or cause to be made such an autopsy as the facts of the case may demand."

The court below held that the authority of a Coroner to cause an autopsy to be made in all cases where death is sudden or violent does not depend on the consent of the next of kin of the deceased, but that it is an official right. The court also held that this right was not limited,

at least under the facts of this case, by the provisions of Sec. 3 of Article XIII of the Anthracite Mine Law, Act of June 2, 1891, P.L. 176, 52 P.S. 541. The article of the Mine Law just cited relates to inquests and not to autopsies, and it provides in Section 3 that the inquest which "shall be adjourned by the Coroner if the Inspector of Mines be not present to watch the proceedings" is "an inquest held by the Coroner upon the body of a person killed by explosion or other accident." Section 5 likewise refers to "any inquest held over the body or bodies of persons whose death was caused by an accident in or about a mine or colliery." The plaintiff does not aver that the death of her husband was thus caused; therefore, the Coroner's right to hold this inquest under the authority of the Act of 1935 was not dependent upon the presence of the Mine Inspector. The provision requiring the presence of the Mine Inspector at the inquest described in Sections 3 and 5 of Article XIII is obviously not for the purpose of enabling the Coroner to secure the Inspector's professional advice as to whether or not an autopsy is necessary or desirable, but it is for the purpose of enabling the Inspector to hear all the testimony as to the cause of the "explosion or other accident" to the end that he may take steps to prevent similar accidents in the future and so that if "the evidence given at the inquest" shows that "the accident was caused by neglect or by any defect in or about the mine or colliery" (quoting from Section 5) the Inspector may institute appropriate criminal proceedings. The inquest provided for in Article XIII is for the purpose of determining the cause of the *accident* and *not* for the purpose of determining the *physical cause of the death of the accident's victims*.

The plaintiff is predicating her claim not upon an inquest but upon an autopsy. A Coroner's inquest to determine the cause of a fatal accident does not necessarily involve the performance of an autopsy upon the bodies of the victims of that accident. Whether or not an autopsy shall be performed upon the body of a person whose

death "is sudden or violent or is of a suspicious nature and character" is left by the Act of 1935, supra, for the Coroner to determine "as the facts of the case may demand." It is not alleged that the Coroner acted in bad faith in this matter. The presumption is that he, as a public official, acted in good faith. This court said in *County of Lancaster v. Mishler*, 100 Pa. 624: "Whenever he [the Coroner] holds one [an inquest] the presumption is that he acted in good faith and on sufficient cause."

As to the alleged refusal of the Coroner's deputy "to surrender the body of plaintiff's husband" to the undertaker delegated by the plaintiff to receive it, this statement does not set forth how long this refusal was persisted in, that is, whether the body was held only temporarily or otherwise, and plaintiff does not claim any damages by reason of that alleged refusal to surrender the body. The damages claimed are all predicated upon the autopsy.

The judgment is affirmed.