123 Pa. Commonwealth Ct. 150 (1989)
553 A.2d 496
Citizens for State Hospital, Doctor Alexander M. Munchak, Chairman, Vicky Wittenbreder, President of Senior Citizens of Lackawanna County, Petitioners
v.
Commonwealth of Pennsylvania, Robert Casey, Governor et al., Respondents.
No. 1746 C.D. 1988.
Commonwealth Court of Pennsylvania.
Argued December 15, 1988.
January 26, 1989.
Argued December 15, 1988, before Judges DOYLE, PALLADINO and SMITH, sitting as a panel of three.
*151 Ronald D. Oley, for petitioners.
Michael B. Sutton, Deputy Attorney General, with him, John G. Knorr, III, Chief Deputy Attorney General, Chief, Litigation Section, and LeRoy S. Zimmerman, Attorney General, for respondents.
OPINION BY JUDGE PALLADINO, January 26, 1989:
Before us in this case are the preliminary objections of the Commonwealth of Pennsylvania, the Governor of the Commonwealth, the Secretary of the Department of Public Welfare (DPW), and the President of the Board of Trustees of Scranton State General Hospital (collectively the Commonwealth) to a petition, in the nature of a complaint in equity, filed in this court's original jurisdiction by: Citizens for State Hospital; Dr. Alexander M. Munchak, Chairman of Citizens for State Hospital; Senior Citizens of Lackawanna County; Vicky Wittenbreder, President of Senior Citizens of Lackawanna County (collectively Citizens), seeking to have this court prevent the Commonwealth from "destroying, selling, transferring and neglecting Scranton State General Hospital" (Scranton). In accordance with the following opinion, we sustain the Commonwealth's preliminary objection that Citizens do not have standing and dismiss Citizens' petition.
Citizens first filed their complaint with this court on July 20, 1988. That complaint was not served upon the Commonwealth. On September 20, 1988, Citizens filed an "amended complaint,"[1] which was served on the *152 Commonwealth on October 5, 1988.[2] The amended complaint was denominated a class action and requested that this court: (1) enjoin the Commonwealth from closing and eliminating Scranton and from denying Citizens the right to "enjoy" Scranton; (2) declare that the actions of the Commonwealth complained of violate the laws and constitutions of Pennsylvania and the United States; and (3) award damages, costs and attorney's fees. The Commonwealth's preliminary objections to the amended complaint include a demurrer, an objection to jurisdiction, a motion to strike, and a challenge to Citizens' standing to obtain the relief requested. Because we conclude that Citizens do not have the requisite standing, we will not address the other preliminary objections raised by the Commonwealth. In order to fully understand why Citizens do not have standing to bring this action, it is first necessary to briefly set forth the legal and factual background of the complaint.

BACKGROUND
Scranton came into existence when the Commonwealth was authorized to accept the conveyance and transfer of the Lackawanna Hospital of Scranton, to be *153 used as a "State Hospital for the Northern Anthracite Coal Region of Pennsylvania," by section 1 of the Act of July 18, 1901, P.L. 775. Section 1 of the Act of July 18, 1901 also directed the Governor to appoint a board of trustees to manage the hospital. Section 2 of the Act of July 18, 1901 stated:
This hospital shall be specifically devoted to the reception, care and treatment of injured persons in the northern anthracite coal region, composed of the county of Lackawanna and the adjacent counties of Wyoming, Susquehanna and Wayne, and in order of admission this class shall have precedence over paying patients.
Section 1 of the Act of July 18, 1901 was repealed by section 2901 of The Administrative Code of 1923, Act of June 7, 1923, P.L. 498, as amended, 71 P.S. §31. The Administrative Code of 1923 reorganized the conduct of the executive and administrative work of the Commonwealth. Preamble to The Administrative Code of 1923. The Board of Trustees of Scranton was placed in the Department of Public Welfare (DPW), section 202 of The Administrative Code, 71 P.S. §12,[3] and DPW was recognized as part of the Executive Department. Section 201 of The Administrative Code of 1923, 71 P.S. §13.
Section 2 of the Act of July 18, 1901 was repealed by section 7 of the Act of June 19, 1939, P.L. 438. Section 1 of the Act of June 19, 1939 removed the restrictions as to which patients Scranton was to treat and to which type of patient Scranton was to give priority. The Act of June 19, 1939 was subsequently repealed by section 1501 of the Public Welfare Code (Code), Act of June 13, 1967, P.L. *154 31, as amended, 62 P.S. §1501. The Code, 62 P.S. §§101-1503, was enacted "to consolidate, editorially revise, and codify the public welfare laws of the Commonwealth." Preamble to the Public Welfare Code. Section 321 of the Code, 62 P.S. §321, contains the purpose of the state general hospitals and states:[4]
The State general hospitals are declared to be hospitals for the care and treatment of the ill, without any restrictions other than those now or thereafter imposed by law upon all general hospitals, and except as each individual institution is restricted by the limitations of its facilities and equipment.
Citizens allege in their amended complaint that the Commonwealth and the Secretary of DPW intend to demolish Scranton and construct a veteran's center on the site and that the Governor requested the legislature to appropriate funds for the demolition. Amended complaint, paragraphs 20 and 21. Citizens also allege that on September 1, 1988, the Commonwealth planned to begin to relocate Scranton's employees with the ultimate goal of closing Scranton on December 31, 1988. Id., paragraph 29. The Commonwealth does not dispute that it plans to close Scranton, demolish it, and build a veteran's home on the site and, in fact, refers us to the Capital Budget Project Itemization Act for 1987-1988, Act of October 21, 1988, P.L., in which the legislature appropriated $8,190,000 for demolition of Scranton and construction of a veteran's home. Commonwealth's brief at 11. It was the decision to close Scranton which precipitated this suit by citizens.

*155 STANDING
The Commonwealth argues that Citizens have failed to allege facts which show how they are "aggrieved" by alleged wrongful actions of the Commonwealth and, therefore, have failed to satisfy the requirements of standing to bring this suit, as set forth by the Pennsylvania Supreme Court in its opinion in Wm. Penn Parking Garage, Inc. v. City of Pittsburgh, 464 Pa. 168, 346 A.2d 269 (1975). Citizens counter by contending that because their amended complaint contains class action allegations, they must be considered as having standing until this court determines whether the class action should be certified.[5]
Initially, we note that filing a complaint as a class action does not prohibit a preliminary objection based on standing. We recognize that a suit, denominated as a class action, should be considered as a class action, even if not properly alleged, until the pleadings have been closed. See Sherrer v. Lamb, 319 Pa. Superior Ct. 290, 466 A.2d 163 (1983). Standing, however, is a prerequisite to obtaining judicial resolution of a dispute. Wm. Penn Parking Garage. If the named plaintiffs in a class action do not have standing, they cannot maintain a class action. Nye v. Erie Insurance Exchange, 504 Pa. 3, 470 A.2d 98 (1983).
The leading Pennsylvania case on standing is Wm. Penn Parking Garage. In that case, the Pennsylvania Supreme Court described standing as follows:
The core concept, of course, is that a person who is not adversely affected in any way by the matter he seeks to challenge is not `aggrieved' thereby *156 and has no standing to obtain a judicial resolution of his challenge. In particular, it is not sufficient for the person claiming to be `aggrieved' to assert the common interest of all citizens in procuring obedience to the law.
Id. at 192, 346 A.2d at 280-281. To be considered aggrieved, a party, seeking to challenge governmental action, "must show a direct and substantial interest," i.e. an interest other than that of the general public which will be adversely affected by the challenged action, and "show a sufficiently close causal connection between the challenged action and the asserted injury to qualify the injury as `immediate' rather than `remote.'" Id. at 202, 346 A.2d at 286. Associations have standing to sue on behalf of their members if they allege that at least one of their members has or will suffer "a direct, immediate and substantial injury" to an interest as a result of the challenged action. Pennsylvania Gamefowl Breeders Ass'n v. Commonwealth, Pa. Commonwealth Ct. 533 A.2d 838, 840 (1987).
The only allegations in Citizens' amended complaint that allege harm to an interest are as follows:
26. If in fact the Scranton General Hospital ceases to operate, the Plaintiffs and other similarily [sic] situated individuals and citizens of the counties of Lackawanna, Wyoming, Susquehanna and Wayne will be without the benefit of a public, general care hospital in contravention of the expressed determination of the general assembly that the Commonwealth of Pennsylvania shall operate a public care hospital in the aforementioned counties.
. . . .
31. Defendants [sic] conspiracy to close Scranton State General Hospital and convert it to a V.A. *157 Nursing Home is one of blatant and malicious conduct in that, they are intentionally depriving the indigent and all others who rely on Scranton State General Hospital for necessary medical care solely for the benefit of the Defendants, as well as the area's Private Hospitals and others who have interests in the closing of Scranton State General Hospital.
32. The Defendants, on the basis of their unlawful conduct set forth above with specificity, have deprived Plaintiffs of the full and equal enjoyment of the services, facilities, privileges, advantages and accommodations in Scranton State General Hospital, which is intent [sic] and willful with the full purpose and interest of depriving Plaintiffs of their constitutional right to freely use State Property.
33. Plaintiffs . . . are suffering and will continue to suffer irreparable injury because of the adamant discriminatory policy, practice to ruin, close and demolish the useful sand, historic red brick masonry hospital structure worth over fifty million dollars.
Examination of the above allegations shows that the interest alleged to be harmed is the same as that of all the citizens of the Commonwealth who might require the services provided by a hospital.[6] There are no allegations that anyone utilizing the services Scranton provides has *158 been unable or will be unable to obtain those services because of the Commonwealth's alleged wrongdoing in connection with Scranton. We note that Dr. Munchak, a named plaintiff, is alleged to be a medical doctor on Scranton's staff but the amended complaint contains no allegations of harm to him in connection with that position.
General allegations that the "indigent and others" who rely on Scranton will be harmed do not show a direct and substantial interest which will suffer an immediate harm if the Commonwealth closes and demolishes Scranton. Citizens' amended complaint does no more than allege harm to the interest all Pennsylvanians have in seeing that the law is obeyed. That is insufficient to meet the requirements of standing. Wm. Penn Parking Garage.
Accordingly, we sustain the Commonwealth's preliminary objection relating to standing and the petition is dismissed.

ORDER
AND NOW January 26, 1989 the preliminary objection of the Respondents (Commonwealth) relating to standing in the above-captioned case is sustained and the petition against them is dismissed.
Judge SMITH dissents.
NOTES
[1] In the original complaint, the Governor was not a named party and the complaint did not conform to the pleading requirements for a class action. The amended complaint contains additional allegations of wrongdoing and a request for damages, names the Governor as a party and conforms to class action requirements.
[2] Citizens, on September 28, 1988, also filed a petition for a preliminary injunction. After a hearing, this court, on October 21, 1988, enjoined the Commonwealth from taking further action to close and demolish Scranton pending final deposition by the court of the proceedings in this case. The Commonwealth appealed to the Pennsylvania Supreme Court. That appeal, pursuant to Pa. R.A.P. 1736(b), acts as an automatic supersedeas of the preliminary injunction. Citizens sought a stay of the automatic supersedeas, which was denied by this court on December 30, 1988.
[3] The composition of the Board of Trustees of Scranton, and other state institutions, is currently provided for in section 401 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, as amended, 71 P.S. §111.
[4] The purpose contained in Section 321 is essentially the same as that which appeared in section 1 of the Act of June 19, 1939.
[5] Class actions are controlled by Pa. R.C.P. Nos. 1701-1716. Rules 1707-1711 deal with certification. Rule 1707(a) provides that certification shall be decided within 30 days after the pleadings are closed or the last pleading was due.
[6] Because of the legislative action taken with respect to Scranton since its establishment, set forth in the background section of this opinion, it is clear that the residents of Lackawanna, Wyoming, Susquehanna and Wayne Counties have no greater right to care in Scranton than any other individual. Therefore, the fact that Citizens live in those counties does not establish an interest other than that enjoyed by the public.